Mr. Ferrola. Good morning, Your Honors. Your Honors, may it please the Court, my name is Jim Ferroli. I'm representing the petitioner, Vachiraporn Vivorakit, in the case before the Court today. Can we ask you to speak up a little bit? Certainly, Your Honors. You have a nice, soft-spoken voice, but we need to hear you. Okay. Yes, Your Honor, absolutely. Your Honor, at this point I'd like to reserve two minutes for rebuttal. Okay. Your Honor, the regulations implementing the Convention Against Torture require that an alien demonstrate that she or he would be, that it is more likely than not that he or she would be tortured if returned to their country of origin. In this case, Your Honor, the agency required Ms. Vivorakit to show that it would be clearly probable that she would be tortured if returned to Thailand. Your Honors, the clearly probable standard is a higher standard of proof than the more likely than not standard. Your Honors, in the normal case, we would apply our deference to this case, and we would determine whether or not the Board's interpretation of the regulation was either plainly erroneous or inconsistent with the regulations. Your Honor, in this case, I think there's some uncertainty as to what the Board's interpretation is. In the current case, the immigration judge has stated that the more likely than not standard actually is a probability standard, and said that probability is the standard that we should apply in determining the case. Do you have any Ninth Circuit authority that says it's now probability and no longer more likely than not? No, Your Honor, there's no specific authority on the point. And just because an immigration judge or someone else with the agency said that doesn't change the legal standard. The standard is more likely than not, correct? Absolutely, Your Honor. What does the country report say about the treatment of individuals in your client's position? The country reports say that the prison conditions are very harsh in Thailand, that persons who are convicted of crimes face severe penalties. Often they face the death penalty in many instances, that the prison conditions are overcrowded, that there is a Union for Civil Liberties report that says that they're particularly overcrowded for women prisoners, that the prisons are rife with disease, and that in fact also that some of the warders are human rights abusers. So I think the prison conditions are very severe. I think they're consistent with the conditions that this Court talked about in Rador, where there are both diseases is rampant throughout the prison conditions. And even if that were the case, does it meet the standard for torture? Is there nothing intentional about this, or was the finding that it was due to budget considerations that improvements of the prisons were hampered by a lack of money or a lack of ability to change it? And if that's the case, how does that square with the definition of torture? Your Honor, I think the — this, again, this case is consistent with Rador. Rador was talking about Haiti and talking about the budgetary restraints in Haiti, and Rador found, in fact, that this was torture in Haiti. In this case, comparatively speaking, I think Thailand — and this is in the record in one of the briefs — that Thailand is 24th, ranked 24th in the world in GDP, as opposed to Haiti, which is ranked about 148th in the world in GDP. So I think there certainly are adequate resources, if there was government will, to — to spend this on prisons. She's already served a fairly significant period of time in U.S. custody, correct? That's correct, Your Honor. Seventy-eight months, something like that? That's right, Your Honor. And doesn't — at least on paper, doesn't Thai law permit, if she were returned, to get credit for that time served? Your Honor, I think the law makes a distinction between acts committed in the United States — excuse me, outside of Thailand and acts committed within Thailand. And certainly — This is both, right? Pardon me? This is both. So she has been — she has served — she has been convicted of an act within Thailand, but she has not been — excuse me, outside of Thailand, but she has not been convicted of her act within Thailand. So she's still liable for prosecution in Thailand for her She is still — in that context, she is still eligible for serving the full sentence of the — of the — With no credit for time served? Even if she got credit for time served, Your Honor, she's still looking at a five-year to 20-year sentence within Thailand. So even if she got credit for the full six years, she's still looking at a 14-year sentence in — in Thailand, Your Honor. Of course, under Thai law, there's room for discretion in that, right? There's room for discretion for — for the amount served, Your Honor. So she's still looking, I believe, at 14 years. I think also — I think, as the experts point out, there is a distinction between the two — the two crimes. So she may not even receive the credit for the time served as to the crime that she committed in Thailand. All right. Your Honor, and I think — I think the more likely-than-not standard is the — is the standard that we're arguing for. And we — we argue that that's distinct from the clear probability standard, Your Honor. So — and I think if you look at the — the board's precedent decisions on this also, if you look at, for example, a matter of JFF, the board applied a probability determination as opposed — as well as a matter of MBA, also the board applied a probability determination. So I think in both of those cases — so I think there is a lot of uncertainty with regard to the standard. I think, consistent with Maldonado, that the board — excuse me, this Court should remand to the board to clarify that uncertainty and allow the agency, in the first instance, to determine whether or not — what really is the more likely-than-not standard, whether or not it is a clear probability standard or a probability determination. And we think that's a significant difference between the two. Okay. You wanted to save about three minutes? You're right there. Sure, Your Honor. That's fine. Thank you. Thank you. Nahaas? Again, may it please the Court, Rebecca Nahaas for the United States Attorney General. Substantial evidence supports the agency's finding that Petitioner failed to show, more likely than not, that each of the hypothetical events would happen in Thailand. Starting with the second link in her chain of hypothetical events, whether she would actually be sentenced to incarceration, she waived that issue by not raising it in her opening brief. And so her entire claim should fail because that's a dispositive part of her claim. But even if the Court finds that it's not waived, as Your Honor's pointed out, the Thai courts under Section or Code 11 of the Thai Criminal Code allows the court to either reduce the sentence for individuals who have been prosecuted abroad and served a time abroad, or to not punish the person at all. So there's broad discretion there. And so she hasn't shown. And this is based on what her own legal opinion said. Both attorneys noted that there would be great discretion in the sentencing. So just based on that link alone, her claim fails. But going to the next link, she failed to show that it's more likely than not that the conditions in Thailand amount to torture. I should note that the reference to Rodore, I believe, is incorrect. Rodore did not rule that the conditions in Haiti had deteriorated to the point that they had become specific intent to torture. All the court in Rodore said was that the board impermissibly engaged in fact-finding when reversing the IJ on that point. So we don't have any decisions in the Ninth Circuit that say that really poor prison conditions amount to torture. In fact, we have Viegas, which is a case from Mexico where the court described very terrible conditions in mental institutions. And the court found no basis in the record that there was a specific intent by the Mexican government to torture those individuals. Likewise, here we have a lot of evidence that, unfortunately, the conditions are the way they are because of the economic and management issues. They've allowed human rights organizations to monitor the prisons. And there's other evidence in the record, as mentioned in the brief. And also there's the first link, which is whether she would even be prosecuted a second time in Thailand. She hasn't shown that. There's substantial evidence that she hasn't shown that by clear probability. And the reason is that her own legal experts indicated that there's discretion in re-prosecuting an individual. And she wasn't able to identify any case where a person similarly situated had faced a re-prosecution. And turning to the legal standard for CAT, I think that's really well established for decades now. The Supreme Court said that more likely than not means clear probability in INS v. Stavik and Cardoza. And this Court in Temeng and Mendoza also said the same thing, that more likely than not equals clear probability. I think this panel would have to reverse the Supreme Court to say otherwise. I can assure you that will not happen. And turning to Petitioner's constitutional claim, I think, again, that it's controlled by this Court's precedent in Morales-Ezquierdo. This is a sympathetic case, like most immigration cases where families are unfortunately separated. But this Court has held, and so have many other courts for over two decades, that there is no substantive due process right to remain in this country. Counsel, I don't read the Petitioner's lawyer, at least by the time of the reply brief, as making that argument. I read him as saying the problem that she's facing in this case, which is different from the problem that the Petitioner's in other cases faced, is that she's in custody. And because the government is detaining her, she is never going to have an opportunity before she is removed to Thailand to in any way engage the state court machinery to establish or to preserve her parental rights. And so I guess I was interested to hear your response to that. I agree with you. She doesn't have a right to remain here just because her child might be here. But what about the fact that all of the problems she's complaining of stem from the fact that she's detained, and you as the government are just never going to give her an opportunity before it's too late to do something about her parental rights? Well, first of all, there's nothing in the record to indicate that the father of her child would not allow her to take the child with her to Thailand. So I want to point that out first and foremost. But to answer your question, there are policies in place with DHS in 2013 issued a directive that allows an alien to request either to attend family court hearings while detained in ICE custody or to arrange for the child's custody or guardianship before they're actually removed, and generously, once they are removed, to parole them back into the country to attend any sort of family court hearing. So there are policies in place, and she hasn't shown that she has requested any of these procedures and that she's tried to take advantage of them and seek custody of her daughter but was prevented because of the government's detention. So unless the court has any questions... I don't see any others. Thank you very much for coming in today. We appreciate it. And argue in two cases, not just one. Thank you so much, Your Honor. Safe travels. Rebuttal at this time? Your Honor, on the matter of JFF, it's our position that Ms. Vorkut does not have to show each element by a clear probability. She just has to show it's more likely than not that each element, in order to qualify for CAT relief. We believe that there is a distinction in the reports by the experts between, again, the crime committed in Thailand and the crime committed in the United States. And she would not necessarily be entitled to any credit for the crimes committed in Thailand. As to INS Stevik, Your Honor, I would argue that that is a judicial interpretation of a statutory of a different statute. And under Brand X, it should not be controlling on the agency. That the agency, in the first instance, should be allowed to determine the meaning of withholding of removal. Excuse me, more likely than not, standard. Your opposing counsel says that your client's own witness, expert witness on Thai law, said that it was not certain that she'd be prosecuted again. Is that right? That's generally right. Mr. Songsofit said that it's his belief that she will be prosecuted if returned. Excuse me, will be prosecuted if returned to Thailand. Again, Ms. Vavorkia doesn't have to show definitively that she will be prosecuted. She just has to show more likely than not that she will be prosecuted. And I think if you look at all of the evidence in the aggregate, the expert opinions together with the country reports that show how seriously and how vigorously the Thai authorities take drug enforcement in violations of their drug laws, I think she does meet that more likely than not standard. What's your response to her waiver argument? Her waiver argument? You know, we're not making here, we're making most primarily legal arguments here. We haven't made a substantial evidence argument. We're really arguing the facts in the context of prejudice. But we don't believe we waived those issues that we did raise those in the brief. But really what we're making is a legal argument that the improper standard was applied and that Ms. Vavorkia was prejudiced by that standard and that, you know, we would also assert to the Supreme Court's decision in Accardi which says that when there's a violation of a regulation that benefits an individual that has individual benefit, that the individual need not show prejudice. And that's what we have here. They violated the regulation. They did not, they did not, they required Ms. Vavorkia to show her likelihood of torture by a higher standard. Okay. Thank you. Thank you very much for your argument. The case just argued will be submitted for decision and the court will stand in recess.
judges: Hawkins, Watford, Rothstein